Ed out. We'll hear first from Mr. Brant Martin. May it please the Court, Your Honor. My name is Brant Martin. I represent Ysleta del Sur Pueblo. We're here to resolve an issue today that has not previously been before this Court. That issue is the meaning and the effect of Section 107B of the Restoration Act to games that are otherwise permitted under Texas law. Section 107B clearly provides that the state cannot exercise civil or criminal regulatory jurisdiction over the tribe's gaming activities. That section has to mean something. That section and its interpretation is not covered by Ysleta del Sur Pueblo. This is the first time that the Court has been asked to construe and apply Section 107B in the context of a game that is otherwise permitted under Texas law. And it's our submission, Your Honors, that the two sections related to the operations of gaming under the Restoration Act, Sections 107A and 107B, can be and must be harmonized. It's a plain-language argument, and it's a clear plain-language argument. It's undisputed that Congress intended to leave the tribe with regulatory authority over gaming in Section 107B. 107B is under, obviously, 107. That is the gaming issue. Now, the state and other district courts that have been confused by this and have admitted that they were confused about this have said, well, Ysleta I settled this. And they take that surrogate federal law language that is in Ysleta I, and they say Ysleta I said that Texas laws and regulations are surrogate federal law over the gaming activities. There's an issue with that. The problem with that is, the problem with that interpretation is that that would leave nothing left for 107B's tribe's sovereignty. The holding of Ysleta I cannot resolve the issue that is before the court today. What we're asking this court to do is interpret 107B in a way that is consistent with both Ysleta I and with the plain language of the Restoration Act. I'm not going to argue Chevron. We're going back to the original statute. And this statute can be harmonized, but it has not yet been harmonized. And it does not require us to vitiate Ysleta I, but it also doesn't require us to vitiate subsection 107B, which is in the statute, and which Judge Martinez in the court below twice said that it was confusing. I believe he said it was a twilight zone of federal, tribal, and state law. And then when he granted the motion to stay the injunction, he stated it was unclear what the reach of 107B's regulatory jurisdiction is. It's our position that 107A and B can easily be harmonized. 107A, and I'm going to put it in the most simplified terms, the way that I understand it, 107A deals with prohibited games, games that state of Texas does not allow. If you're not under prohibited games, then you're in 107B, where the tribe has been reserved its civil and criminal regulatory jurisdiction. So if the game is allowed by the state of Texas, then the tribe's regulatory jurisdiction is its own, and it is not the jurisdiction of the state of Texas. And that's a critical distinction, because in 1980, the voters of the state of Texas passed a constitutional amendment that allowed for bingo to exist. Bingo is a permitted game under Texas law. It is not prohibited. It takes it out of 107A and puts it into 107B. The words prohibit in 107A are what applies to the extent that is federal law over gaming, we agree that it is surrogate federal law in terms of prohibited games. But if you read it as the state would have you read it, and admittedly, as some lower courts have read it, if you read it to say that all Texas laws and regulations are a surrogate federal law over gaming activities, then we would submit there's nothing for 107B to do. There's nothing left. There's no regulatory jurisdiction left, and Congress specifically reserved that regulatory jurisdiction within the tribe's sovereignty. And if Congress put it in there, there's a reason for it. Secondly, the aspect of the regulatory regime for the state of Texas, is, let me start this part over because I think it's, 107B has yet to be explained by the state or by the courts any other way. The two explanations that the state has given at different times, one has been that it's a venue provision. That doesn't work. Venues in 107C, and it's a clear venue provision. And in fact, it's not only a clear venue provision, it also references 105F under the Restoration Act, which is the other venue provision. There's nothing in 107B to reference venue. It's not about venue. It's a power jurisdiction. It's who has the power to regulate. That's the key piece of it. 107B is also, as the state's other explanation is, well, it's just a restatement of Public Law 280. Well, there is no just a restatement of Public Law 280. Public Law 280 is a reservation of the tribe's sovereign power. The state, with the district court's help in certain respects, has tried to chip away at the tribe's sovereignty by ignoring subsection B. But it's there for a reason, and that's why we are here before this court, is to try to figure out what exactly does it mean? What does it mean in the eyes of this court? Because LATA 1 doesn't answer the question. Is LATA 1 dealt with Las Vegas-style games? It dealt with prohibited games. Keno, poker, craps, full-style casino games. That's not what we're talking about here. We are talking about bingo. And to anticipate one of the state's next arguments, they're going to say, well, the way that you're doing bingo doesn't work. The way that you're doing bingo violates Texas law. But that's not what the trial court found below. What the trial court found below and what the decision turned on in Order 183 and the injunction that followed from it was all from the Texas Occupations Code. That's the Texas Bingo Enabling Act. That's regulation. And that is violative of Section 107B. They can't come in and say it's not bingo, because they don't have the record for that. And if they want to say that, great, remand it, and we'll have that fight in the trial court. But it's bingo, and it hasn't been found to not be bingo. How far it goes on regulating it, they have relied on is LATA 1. They've relied on, quote, all gaming would be subject to all of Texas regulations. Therefore, reading Subsection 107B out of the Restoration Act. Is bingo the only thing involved? Yes, Your Honor. Slap machines? No, Your Honor. Now, to be in full disclosure to the court, in the state's original and amended complaints, they complained about the machines that are being used to play the bingo, and they complained about it under Chapter 47 to say that they are all but slap machines. It comes up in all of these cases. However, that is not in the record that these were actually slap machines. These are bingo-based games, and they're bingo games. And that part was never established by them. And again, that's why I asked the court, if that's the question, then let's remand this and have that fight. If they want to say this is not bingo, I welcome that. I welcome that dispute. It is our position. This is bingo. They may not like the way it looks. They may not like the bells and whistles. And we've talked about that. That's been before this court. That's been for the trial courts. And consistently, the courts have found that just how it looks or what it does or whether it's got reels or bells or buzzers does not make it illegal per se, doesn't make it not bingo. Your Honor, if there's no other questions, I will give back some time, and I look forward to speaking on rebuttal. Thank you. Ms. Mackin. May it please the Court, Anna Mackin for the State of Texas. The judgment of the District Court should be affirmed for two reasons. First, Ysleta 1 squarely held that under the Restoration Act's gaming provisions, which were agreed to by the Pueblo as a condition necessary to obtain restoration of their federally recognized status, Texas gaming laws and regulations apply on the lands of the Pueblo. Second, and as Ysleta 1 also held, the Restoration Act is incompatible with and therefore controls over IGRA. If these two holdings were not abundantly clear after Ysleta 1, last year in Alabama-Coshawta, a panel of this Court reiterated them. This Court denied a request to rehear that case en banc, and the United States Supreme Court denied cert. So because this Court is bound by the rule of orderliness, it should reject what to re-litigate Alabama-Coshawta and Ysleta and conclude that the District Court did not abuse its discretion when it enjoined the Pueblo from gaming that violates Texas law. Martin says Ysleta 1 is distinguishable because it dealt with prohibited games, not like bingo. Well, two responses to that, Your Honor. First of all, Ysleta 1 contemplated the conflict between the Restoration Act and IGRA. So the Court there determined that because the statutes could not be reconciled, the Restoration Act applies to the tribe's gaming. And as the Court in Alabama-Coshawta recognized, there's nothing in Ysleta to suggest that it is limited to the Class 3 gaming that the tribe was attempting to engage in there. Additionally, my friend made much of bingo. But the Class 3 gaming there wasn't prohibited in Texas. It was, Your Honor. So if it was prohibited, what we have here is something that is not prohibited in Texas. What we have here is prohibited by Texas law. So he's wrong when he says that Texas legalizes some form of bingo. He's not wrong that certain forms of charitable bingo are permitted in Texas. But he is wrong that Texas does not prohibit gambling as a matter of public policy. And as this Court in Ysleta 1 and the Western District of Texas in Ysleta 2, which this Court affirmed, held, that doesn't mean that the tribe does not have to comply with regulations. So the distinction is the enforcement mechanism. The Restoration Act provides that Texas can enforce— Let me make sure I understand. What I'm hearing is there is some form of bingo that's legal in Texas. There is, Your Honor. So is there a problem that they're trying to do a form that's illegal in Texas? Is that what it is? That is one of the problems. And the other problem is that they are attempting to engage in activity without complying with the pertinent regulations. So the— I'd like to focus on this subsection B that my friend spoke about. It says, Nothing in this section shall be construed as a grant of civil or criminal regulatory jurisdiction to the state of Texas. It does not say that Texas's gaming regulations are therefore unenforceable against the tribe in a proceeding in federal court that the Restoration Act specifically authorizes in subsection C to enforce both the gaming laws and regulations of the state of Texas, which— I don't understand what you mean enforceable in court. The regulations are not designed to only have some effect in a court proceeding, are they? As a general matter, they are not. With respect to the tribe, under the Restoration Act and the Restoration Act, if it was set up to ensure the tribe's compliance with Texas's laws and regulations, then they are only enforceable in federal court. And yes, let a one sort of— Let me understand. You're saying it takes a federal court order to ensure enforcement, but the regulations are designed for people to comply with the regulations, aren't they? If they comply, then they don't end up in court. I'm trying to understand. You're saying there's a whole set of regulations that don't even come to play unless somebody's litigated. No, Your Honor, I'm not. And I'm sorry if I was not clear. Okay. Subsection A of the Restoration Act says that gaming that is prohibited in Texas is prohibited as to the tribe. Subsection C says the courts of the United States have exclusive jurisdiction to enforce subsection A. So, as a— Just to say, if there's an argument about compliance, then you got to go to court to get it enforced. Yes, Your Honor, exactly. And so that kind of brings us back to yes, let a one, which held that whatever subsection B may say about regulatory jurisdiction, and I'm quoting, it is subsection A that determines whether Texas prohibits certain gaming activities. And then the court looked to the text of subsection A, which explicitly incorporates Tribal Resolution TC0286. And in that resolution, the Pueblo requested that the Restoration Act provide that all gaming, lottery, or bingo, as defined by the laws and administrative regulations, of the state of Texas, shall be prohibited on the tribe's reservation. So, given that subsection A's prohibitory language explicitly incorporated this Tribal Resolution, indicating it would be bound by the administrative regulations of the state, the yes, let a one court was left with the unmistakable conclusion that Congress and the regulations to operate as surrogate federal law on the tribe's reservation in Texas. So, given yes, let a one, there's really nothing, there's no need to litigate, re-litigate this issue. The tribe is bound to follow Texas's regulations. And I think that the enforcement mechanism under subsection C eludicates this a little bit, because it says, the courts of the United States shall have exclusive jurisdiction over any offense in violation of subsection A. So, that's just making clear that for these two tribes covered by the Texas law. Judge Martinez-Below was not sitting as a regulator when he enjoined the tribe from activities that violate both Texas law and Texas regulations. And so, subsection C continues, nothing in this section shall be construed as precluding the state of Texas from bringing an action in the courts of the United States to enjoin violations of the provisions of this section. So, obviously, Congress believed that this regulatory jurisdiction language would work alongside the enforcement mechanism that it provided for in subsection C. Federal courts are enforcing and Texas regulators are not. And the Alabama-Coshawta court, in fact, reiterated this, holding that Texas's gaming laws and regulations operate as surrogate federal law on the reservations of Restoration Act tribes in Texas. This court was pushed to revisit that, to rehear Alabama-Coshawta en banc, and it declined that invitation. I'd also like to turn to the discussion that my colleague had with the court regarding the Occupations Code. The Occupations Code is very much law. It is very much a statute. It is the Bingo Enabling Act, sure, but it is not merely regulatory. There are regulations that enforce and administer the provisions of that law, but it is very much a law. And so, I would hope to just make clear that merely because the Bingo Enabling Act has some civil enforcement mechanisms rather than criminal, does not take it outside of the laws of the state of Texas. And Judge Martinez below found violations both of those statutes, those laws codified in the Occupations Code, as well as implementing regulations. So, it boils down to the best colorable argument that the tribe offers is that it's not clear what impact Section 107B has on gaming. And this is the bulk of their reply brief, but I'd like to direct the court to what is clear. It is clear that Section 107A prohibits all gaming that violates Texas law. It's also clear that under Ysleta 1 and Alabama Cushata, this encompasses both statutes and regulations. And it's finally clear that under Subsection C, U.S. courts have jurisdiction to enforce those that they are engaged in AGRA Class 2 gaming. I would encourage the court to view the record in this case in particular, ROA 1890 and ROA 2848-51. This 1890 is a DVD of an inspection of the tribe's gaming facility, and the latter record sites are photos and descriptions of the machines included by Judge Martinez in his summary judgment order. And I think that that will also be helpful to the court in framing what exactly is going on here, because we hear a lot about bingo, and that conjures images of sort of ladies on a Sunday with their daubers stamping cards. And that is not what's going on here. This is a massive facility with machines that do resemble slot machines. And our argument is not based upon the fact that they look, act, sound, feel like slot machines, but I think that it helps illustrate kind of that the word bingo by itself isn't what the legal determination in terms of the activity's permissibility in the state of Texas. But turning back to the Class 2 versus Class 3 issue, it doesn't matter for purposes of the question before the court, because it is settled that the Restoration Act controls. Ysleta 1 rejected the idea that the Restoration Act and IGRA could be harmonized, finding them fundamentally incompatible. In particular, it considered the enforcement mechanism in subsection C, finding the state's right to pursue injunctive relief in federal court fundamentally at odds with the concepts of IGRA, the federal regulatory structure that that established. The court also looked to the fact that the Restoration Act is specific to the two tribes that it covers, whereas IGRA is a general statute, and held not only that the Restoration Act survives IGRA, but that it and not IGRA would govern the determination of whether gaming activities are allowed under Texas law. Alabama Cushawda confirmed this. As cited on pages eight and nine of our brief, the court reaffirmed that the Restoration Act and the Texas law it invokes, and not IGRA, and here's the important part, govern the permissibility of gaming operations on the lands of the tribes. So the argument that Ysleta 1 did not address IGRA class 2, I don't think that's quite right, because for this court's purposes, it didn't have to. Ysleta 1 held, and Alabama Cushawda reaffirmed that the Restoration Act and not IGRA is what controls. So IGRA doesn't apply, class 2 versus class 3 is immaterial, and Alabama Cushawda held Restoration Act's gaming provisions, not IGRA, provide the framework for deciding the legality of any and all gaming by the Pueblo. Finally, I'd like to talk about, turn back to the Occupations Code and explain a little bit about how the statutes are working there, because opposing counsel's presentations seem to suggest that the Bingo Enabling Act is a lesser category of law, and it is not, in fact. Chapter 47 of the Texas Penal Code prohibits gambling, and it is a defense to prosecution under Chapter 47 that the conduct is authorized by the Bingo Enabling Act. So those are exceptions to a compliance for the Restoration Act tribes. Unless I can be helpful to the court on any other points, I will yield. Pardon? Can I be helpful to the court on any other points, any questions? Thank you. Thank you. Martin? You have five minutes, Horne-Bowe. Yes, Your Honor. May it please the court, I'm not arguing IGRA. I didn't come up here to argue IGRA, and I haven't stated that I am. This later one was clear on that, and opposing counsel and I agree on that. I'm arguing from the plain language of the Restoration Act, and what I didn't, still haven't heard from the state is an explanation to what 107B means. 107B is a restriction on the ability of the state to regulate gaming by the tribe. That's what it says, and it's never been addressed. It's never been clarified, and what is later one said, which was that Texas laws and regulations, or a surrogate federal law for gaming, cannot apply all the way for all regulations, because otherwise 107B is surplusage, so it has to mean something. What I've submitted to this court is what I believe the intent was, which is that 107A talks about prohibited games, and as later one would be correct in terms of prohibited games, all Texas laws and regulations apply, but as for non-prohibited games, you're in 107B. As for her argument regarding the Tribal Resolution, I'm happy to discuss that. The Tribal Resolution was adopted prior to the Restoration Act's passage. In fact, it was adopted during the 99th Congress, when they were trying to get a version of the Restoration Act passed, and the Tribal Resolution, it said, similar to what she said it said, it said there's going to be nothing. There's going to be no gaming, no bingo. It had a laundry list of the games. We're not going to do it. That's what the Tribal Resolution said, and the original version of the Restoration Act, which I believe was H.R. 1344 in the 99th Congress, it had the same language in there. It had the exact same language in there. It had the laundry list. You can't do this. This is the gaming that is prohibited. The thing is, the 99th Congress let that bill die. It did not pass, and the did two things. It took out the laundry list. It took out the words and regulations from Subsection A, and it put in prohibited into Subsection A, and it maintained the PL-280 Reservation of Jurisdiction in Subsection B. That was the compromise that Congress reached. We don't have to go into IGRA. We don't have to go into Cabazon Band. I'm not arguing what the I'm not arguing what they argued in 1985 regarding IGRA and Cabazon Band and whether or not the Restoration Act anticipated it, all of that. That's settled, but what I am saying is that 107B has not yet been interpreted, and it's got to mean something. Order 183 does exactly what we've been worried that it will do. It chips away at the tribe's sovereignty because it says, and I think with all due respect to opposing counsel, I think she just said this. She said, again, all of Texas laws and regulations apply. The Bingo Enabling Act applies. The Texas Occupation Code Act applies. Whatever we think applies, applies. Well, then what is 107B there for? There's no other explanation. You can't reserve the tribe's sovereignty in one respect and then have the state over a series of at it until we're here where we are today, which is it all applies, every bit of it. That's not what the Restoration Act talks about. That's not what the Tribal Resolution has nothing to do with this because what we could assume is that Congress passed what they intended to pass and what they omitted they intended to omit. The Tribal Resolution is as this panel pointed out in a previous opinion that what the Tribal Resolution was asking for is a question of fact that is not exactly conceded. It was asking to restore the federal trust relationship. We admit that. Was it willing to suffer some conditions? At the time it was, but that's not the compromise Congress ended up reaching and that's the difference. In sum, your honors, I was always taught to go back to the actual statute, right? 107B states in its entirety, caps, title, no state regulatory jurisdiction, hyphen, nothing in this section shall be construed as a grant of civil or criminal regulatory jurisdiction to the state of Texas. Everything else is under the tribe's jurisdiction that was specifically reserved by Congress to the tribe, not to the state of Texas. Thank you. Thank you, Mr. Martin. These cases will be taken under advisement.